## COMMONWEALTH *vs.* JAIME ORTIZ-SOTO.

No. 98-P-1745.

Plymouth. October 12, 1999. - July 12, 2000.

Present: KASS, KAPLAN, & GELINAS, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality, Identification. *Practice, Criminal,* Argument by prosecutor.

At the trial of narcotics offenses, evidence that the defendant was present, some ten days prior to the actual drug sale, in the apartment where the transaction later occurred, while police conducted a search pursuant to a warrant, was relevant to the defendant's identification and to his connection to the apartment, and its admission was not error. [647-649]

At a criminal trial, the prosecutor's remarks regarding the defendant's conversations in Spanish with a third party while selling narcotics to an undercover police officer were proper arguments on reasonable inferences that could be drawn from the evidence. [649-650]

A prosecutor's misstatement of the evidence in closing argument did not create a substantial risk of a miscarriage of justice, and any prejudicial effect was minimal. [650]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on March 1, 1995.

The case was tried before *Francis T. Crimmins, Jr.,* J.

*Melissa P. W. Ellis* for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. A jury of six in the District Court returned verdicts of guilty on an amended complaint of cocaine distribution, G. L. c. 94C, § 32A(*a*), and a complaint of drug violation near a school or park, G. L. c. 94C, § 32J. The defendant urges reversal, contending that (1) the trial judge erred in denying his motion in limine to exclude evidence of the defendant's presence, some ten days prior to the actual drug deal, in the apartment where the transaction occurred; and (2) the prosecutor, in both his opening and closing remarks, misstated the evidence

and argued facts not in evidence, thereby creating a substantial risk of a miscarriage of justice. We affirm the convictions.

Taken in the light most favorable to the Commonwealth, the evidence warranted the jury finding the following facts. On December 10, 1994, armed with a search warrant, the Brockton police searched apartment eight at 545 North Main Street in that city. The search proved fruitless. No contraband was discovered and no other evidence of illegal activity appeared. The defendant and two others were in the apartment when the police arrived, and remained during the search. The police asked to photograph those present; they consented and pictures were taken. The photograph of the defendant taken on December 10, 1994, was given to a State police undercover agent. Brockton police Officer Michael Dadek, present at the unavailing search, also provided the trooper with a description of the defendant.

On December 20, 1994, the trooper, posing as a drug purchaser, went to the same apartment. The trooper was admitted by an Hispanic male; he noted a barricade at the apartment door. In part based on the photograph and the Brockton officer's description, he identified the defendant, who was seated on a couch in the living room. The defendant asked what the undercover trooper wanted. The trooper responded that he "wanted a forty," indicating that he wanted cocaine, packaged for sale at forty dollars. The defendant then replied in English, "I don't know you," and yelled something in Spanish to someone down a hallway in the rear of the apartment. Another male came down the hallway and looked at the defendant. After conversation in Spanish[1] with the defendant, the newcomer asked the trooper, in English, who he was. The trooper identified himself as "Richy." The newcomer nodded to the defendant and then returned via the hallway to the back of the apartment. The defendant asked the trooper again, in English, what he wanted. The trooper's reply was the same, "a forty." The defendant then made a statement, in Spanish, to a second person, seated on the couch to the defendant's right. After this conversation, the second person rose, took a package containing white powder out of his pocket, and handed it to the trooper. The trooper then walked over to the defendant and attempted to

---

[1]The trooper did not speak Spanish. This and other conversations in Spanish were not translated; these exchanges, subject of the comments made by the prosecutor during opening and closing statements, form the basis for the defendant's second contention of error, discussed below.

hand him forty dollars; the defendant responded, "no, no, give it to him," pointing to the person who had provided the cocaine. The defendant then asked if the trooper had the defendant's beeper number. When the trooper replied that he did not, the defendant wrote the number on a matchbook and gave it to the trooper, advising him to use the number and not to come to the apartment again. The trooper then left the apartment. Some days later, seeking additional evidence of drug distribution at the apartment, the trooper returned to the apartment and found it empty. The defendant, at that time known to the trooper only as "Ochee," could not be found. At a later time the trooper learned that the defendant's real name was Jaime Ortiz-Soto. An arrest warrant issued, and the defendant was apprehended and charged. The photograph and the description provided by Officer Dadek were used to identify the defendant as the person named Soto. Trial commenced four years after the incident.

1. *The motion in limine.* Prior to trial, by a motion in limine which the trial judge denied, the defendant sought to keep evidence of the December 10th search, his presence in the apartment at that time, and the photograph from being introduced at trial. He argued that this evidence of the defendant's prior bad acts was inadmissible, and highly prejudicial, because from it the jury might infer bad character and a propensity to commit the crimes with which the defendant was charged.[2] The defendant did not object to the introduction of the evidence at trial. Therefore, we review on the basis of whether any error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Niemic*, 427 Mass. 718, 724 (1998), citing *Commonwealth* v. *Keniston*, 423 Mass. 304, 308 (1996); *Commonwealth* v. *Whelton*, 428 Mass. 24, 25 (1998). We determine that no error attended the admission of the contested evidence.

We do not think that the defendant's presence in the apartment on December 10, when the apartment was first searched, constituted prior bad acts of the defendant. No contraband was found, and there was no evidence of misconduct, criminal or otherwise, at the time of the search. As far as the jury knew, the defendant was not named either in the affidavit or in the search warrant, and nothing pointed to his residence in the apartment. In *Commonwealth* v. *Dixon*, 425 Mass. 223, 230 (1997),

---

[2]The defendant also characterizes the challenged testimony as inadmissible hearsay. The testimony was based on personal observation, and did not amount to hearsay. See Liacos, Massachusetts Evidence § 8.1 (7th ed. 1999).

evidence of the arrest of a witness was considered not to show "bad acts or illegal activity such as would otherwise be inadmissible as overly prejudicial or inflammatory."[3] Here, the defendant's presence in the apartment, in the circumstances, was even less indicative of previous misconduct than had he been arrested. While the evidence of the defendant's presence in the apartment at the time of the vain search might involve some minimal risk that the jury might infer bad character, the probative value of the evidence outweighed that risk.

To be relevant, "the evidence must have rendered the desired inference more probable than it would have been without it." *Commonwealth* v. *Copeland*, 375 Mass. 438, 443 (1978). See *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). "Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge. . . . [T]he judge's determination of these questions will be upheld on appeal absent palpable error." *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995), quoting from *Commonwealth* v. *Dunn*, 407 Mass. 798, 807 (1990). See *Commonwealth* v. *Peixoto*, 430 Mass. 654, 661 (2000). Where the risk of prejudice is less (than had the Commonwealth sought to introduce evidence of "bad acts" or misconduct), the probative value of the evidence need be less as well.

The evidence was relevant for several reasons. Evidence of the defendant's presence in the apartment tended to link the defendant with the apartment, especially in the face of the defendant's claim, made in his direct testimony, that he was a casual visitor who just happened to be in the apartment on December 20, and did not know the last name of the resident. Officer Dadek's testimony concerning the defendant's description and the photograph taken on December 10 were relevant to identification of the defendant. Identification was not stipulated, and was part of the Commonwealth's burden at trial. See *Commonwealth* v. *Weaver*, 395 Mass. 307, 309-310 (1985). Both the testimony of Officer Dadek and the photograph helped buttress the trooper's identification of the defendant in the apartment and at the time of the defendant's arrest and trial some four years later. The evidence was probative as well of "the state of

---

[3]In *Commonwealth* v. *Dixon*, 425 Mass. 223, 228 (1997), the court did point out that evidence of arrest is generally improper as a means of impeachment of a witness.

police knowledge which impelled the approach to the defendant. . . . . [The officer] should be allowed some explanation of his presence and conduct." *Commonwealth* v. *Cohen*, 412 Mass. 375, 393 (1992) (citation omitted). Compare *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 114 (1998).

Even had introduction of the evidence been error, its introduction would not have created a substantial risk of a miscarriage of justice. The evidence of the defendant's guilt was sufficiently strong. The trooper provided direct testimony that the defendant orchestrated a drug sale in a barricaded apartment and, that by providing his beeper number, the defendant would be available for future sales. See *Commonwealth* v. *Ward*, 45 Mass. App. Ct. 901, 902-903 (1998); *Commonwealth* v. *Harris*, 47 Mass. App. Ct. 481, 488-489 (1999).

The defendant also complains that, after both counsel had completed their arguments on the motion in limine, the judge made no findings on the record, but simply denied the motion. The defendant contends that in so doing, the trial judge failed to "weigh the probative value of prior conduct against its distorting impact," prior to exercising his discretion in admitting the evidence. See *Commonwealth* v. *Wood*, 7 Mass. App. Ct. 455, 460 (1979), *S.C.*, 380 Mass. 545 (1980). We infer such analysis from the trial judge's decision to admit the testimony after hearing lengthy argument from both parties regarding the probative value versus the prejudicial effect of the evidence. *Ibid.*

2. *Opening remarks and closing argument.* In the course of the transaction on December 20, the defendant spoke with his confederates in Spanish, a language that the trooper did not understand. The defendant argues that it was error for the prosecutor to suggest, as he did once in his opening statement and three times in his closing argument, translations of those conversations. There was no error. The prosecutor's remarks did not offer a translation, but rather urged no more than the fair inferences that could be drawn from the *context* in which the conversations occurred. The trooper's specific description of the activities taking place during the conversations provided a foundation in evidence for the argument. See *Commonwealth* v. *Dostie*, 425 Mass. 372, 374-377 (1997); *Commonwealth* v. *Ward*, 45 Mass. App. Ct. at 902-903. Moreover, on two occasions the

prosecutor couched his argument in language that made clear to the jury that his statements were nothing more than argument.[4]

The prosecutor's misstatement of the evidence in his closing, suggesting that the trooper had tried the beeper number when in fact there was no evidence that he had, was error. There was no objection, and we review to determine whether there was a substantial risk of a miscarriage of justice. The prosecutor prefaced this argument by cautioning the jury that it "was my memory, and it's your memory that dictates." The judge also amply charged the jury that opening statements and closing arguments were not evidence. Finally, any prejudicial effect was minimal. The fact that the jury heard that the officer dialed the beeper number that the defendant had given him, but no one responded, could likely have undercut the Commonwealth's attempt to "tie" the defendant to the beeper number. The error, therefore, did not create a substantial risk of a miscarriage of justice.

*Judgments affirmed.*

---

[4]The prosecutor prefaced his statements with the words, "[I]t is not a stretch to assume . . . ," and "I suggest to you . . . ." See *Commonwealth* v. *Silva*, 401 Mass. 318, 329 (1987).