# United States Court of Appeals
## For the First Circuit

No. 03-1571

ROGER NORTON,

Petitioner, Appellee,

v.

LUIS SPENCER,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,[*] Senior District Judge.

Dean A. Mazzone, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, were on brief, for appellant.
Stewart T. Graham, Jr., with whom Graham & Graham, was on brief, for appellee.

October 30, 2003

---

[*] Of the Northern District of California, sitting by designation.

**TORRUELLA**, **Circuit Judge**.    Roger Norton, petitioner-appellee, defends the district court's order granting his writ of habeas corpus.    After careful review, we affirm.

## I.  Background

Roger Norton ("Norton"), was accused of sexually assaulting Héctor Fuentes ("Fuentes"), an eleven year old child. Fuentes reported Norton's alleged indecent assault to the state police after he discovered his cousin, Noel Rodríguez ("Noel"), crying inside Norton's camper.  Noel also told the police that he was indecently assaulted by Norton.

Following a pretrial hearing in Massachusetts Superior Court, the trial judge ruled that Noel was not competent to testify because he refused to answer questions regarding where Norton had allegedly touched him.    As a result, the Commonwealth of Massachusetts ("Commonwealth") did not proceed on the indictment alleging that Norton indecently assaulted Noel.  The Commonwealth did proceed, however, on the charges against Norton alleging he indecently assaulted Fuentes.

Fuentes was the only witness to testify to the incidents at trial.  He testified that Norton grabbed his genitalia, without consent, at least three times.  Fuentes also testified that Norton asked him to have sex on more than one occasion.

Norton was convicted on four counts of indecent assault and battery on a child under the age of fourteen, and sentenced to

incarceration in state prison. On appeal, the Massachusetts Appeals Court ("MAC") affirmed the conviction in Commonwealth v. Norton, 664 N.E.2d 883 (Mass. App. Ct. 1996) ("Norton I"). The Massachusetts Supreme Judicial Court ("SJC") denied Norton's application for leave to obtain further appellate review in Commonwealth v. Norton, 667 N.E.2d 1159 (Mass. 1996) ("Norton II").

Some time after the SJC denied Norton's application for further appellate review, Norton made two discoveries that he argued constituted "new evidence" under 28 U.S.C. § 2245(d)(1)(D). The first discovery involved the timing of the assaults. At trial, the prosecution established that the alleged assaults occurred in late 1989, around the time Fuentes's mother was in the hospital giving birth. Norton later discovered the birth certificate of Fuentes's sibling, who was born in July 1989, not late 1989. Norton also obtained affidavits stating that he was not a guest in Fuentes's cousin's house, the place where the alleged assaults occurred, in July 1989.

Second, Norton obtained affidavits from Noel and Noel's mother, María Sonia Rodríguez ("Rodríguez"), stating that Noel had fabricated his allegation against Norton at the insistence of Fuentes and that Fuentes also fabricated his allegations. Further, Rodríguez added that the Assistant District Attorney and another person repeatedly told Noel and Fuentes how to testify even after Noel informed them that none of it was true and that Fuentes had

made it all up.  It is undisputed that the prosecutor never provided Norton with the information contained in Noel's or Rodríguez's affidavits.

Norton moved for a new trial before the original trial judge based on the new evidence.  The motion was denied.  The MAC affirmed the denial of Norton's motion for new trial in Commonwealth v. Norton, 728 N.E.2d 972 (Mass. App. Ct. 2000) ("Norton III").  The SJC denied Norton's application for leave to obtain further appellate review in Commonwealth v. Norton, 738 N.E.2d 354 (Mass. 2000) ("Norton IV").

Norton then filed a writ of habeas corpus in the United States District Court for the District of Massachusetts ("district court") claiming, inter alia, that the prosecution violated rights afforded by Brady v. Maryland, 373 U.S. 83 (1963).  The district court ordered that Norton's writ of habeas corpus be allowed unless the Commonwealth timely filed a request for an evidentiary hearing. Norton v. Spencer, 253 F. Supp. 2d 65, 76 (D. Mass. 2003) ("Norton V").  The Commonwealth did not file such a request.  Rather, the Commonwealth filed a motion to reconsider.  The district court denied the motion and ordered the habeas writ be granted unless the Commonwealth instituted proceedings to retry Norton.  Norton v. Spencer, 256 F. Supp. 2d 120 (D. Mass. 2003) ("Norton VI").  The Commonwealth moved for a stay of the district court's order

granting Norton's request for habeas relief with this Court. This Court granted the stay pending disposition of this appeal.

## II. **Analysis**

### A. **Standard of Review for the District Court**

The first question in this case is whether the district court used the proper standard of review when it granted habeas relief. In reviewing a judgment on a petition for a writ of habeas corpus, this Court examines the legal conclusions of the district court, including the proper standard of review, de novo. Almanzar v. Maloney, 281 F.3d 300, 303 (1st Cir. 2002), cert. denied, 537 U.S. 817 (2002).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

> prohibits a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Williams v. Taylor, 529 U.S. 362, 399 (2000) (internal quotations omitted). However, "AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings." Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001), cert. denied, 535 U.S. 1018 (2002); see also Ellsworth v.

Warden, 333 F.3d 1, 6 (1st Cir. 2003).[1]  If a claim was not adjudicated on the merits in a state court proceeding, then the issue is reviewed de novo.  Id.

The parties disagree as to whether Norton's federal claim under Brady v. Maryland, 373 U.S. 83 (1963) was adjudicated on the merits in the state court proceeding.  In denying Norton's motion for new trial, the trial court stated that Norton

> filed a motion for a new trial raising the same issues as were raised on the direct appeal or that could have been raised. [Norton's attorney] . . . did an excellent job in cross examining witnesses and developing any inconsistencies.  The incident in [Norton's] trailer was addressed at trial at some length.  The defendant is unhappy at the facts the jury felt were proved.  Other matters of 'new evidence' were available at the time and could have been introduced or relied on by the defendant if it was in his best interest to do so . . . As trial judge at the time I do not feel that any of the issues raised by [Norton] has merit deserving a new trial.  [Norton] got a full fair trial with competent counsel.

In affirming the trial judge's decision, the MAC wrote that the "weight and import of [the] affidavits were for the trial court's discretion.  [The trial judge] was not required to accept the statements as true even if they were undisputed.  Thus, the judge could properly determine that these affidavits did not demonstrate any bad faith on the part of the prosecutor."  Norton

---

[1]  The Commonwealth argues that Fortini is undermined by Early v. Packer, 537 U.S. 3 (2002).  We rejected this argument in Ellsworth, 333 F.3d at 6 n.1.

III, 728 N.E.2d at 972 (citations omitted). The MAC further explained that "[i]n light of the fact that much evidence at the trial was equally calculated to discredit the victim [Fuentes], the judge could properly regard the affidavits as largely cumulative in their basic effect. Undisclosed evidence that is cumulative does not normally require a judge to grant a new trial." Id. (citing Commonwealth v. Tucceri, 589 N.E.2d 1216 (1992)).

The district court held that "no state court remotely addressed" Norton's federal Brady claim. Norton V, 253 F. Supp. 2d at 71. As a result, the district court applied de novo review. Id. at 72. We hold that applying de novo review was inappropriate as the MAC did address the Brady issue. The MAC, citing to Tucceri, 589 N.E.2d 1216, held that undisclosed evidence that is cumulative does not require a new trial. Norton III, 728 N.E.2d at 972. As we have previously held, "Tucceri states explicitly that it is articulating a state law standard that is more favorable to defendants than the Federal Constitutional [Brady] standard." McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir. 2002) (internal quotations and citation omitted). When, as here, there is a state case "that explicitly says that the state adheres to a standard that is more favorable to the defendants than the federal standard . . . we will presume the federal law adjudication to be subsumed within the state law adjudication." Id. Since the MAC addressed

the Brady issue, the district court should not have reviewed the case de novo.

## B. The AEDPA Standards

Norton's claim must be analyzed under the AEDPA standards because the federal claim was adjudicated in the state court proceeding. AEDPA precludes a habeas court from granting relief, unless the state court holding "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The Supreme Court has stated: "Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." McCambridge, 303 F.3d at 36 (citing Williams v. Taylor, 529 U.S. at 412-13).

It is difficult to determine how to approach the analysis under AEDPA because neither the trial judge nor the MAC provided a thorough explanation of their decisions. Fortunately, the result is the same whether this case is viewed as an unreasonable determination of the facts in light of the evidence presented in

the state court proceeding or as an unreasonable application of clearly established federal law.

### C.  **Unreasonable Determination of the Facts**

A "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254 (e)(1).  The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593 (1982).

The Commonwealth argues that, by denying Norton's motion for a new trial, the trial court implicitly found the affidavits to be incredible.[2]  We disagree.  Unlike cases holding that a failure to make an express ruling is tantamount to a finding against the credibility of the affiants, there is no indication that the trial court ever viewed or evaluated the affidavits.  Further, an inference that the affiants were incredible is not "fairly supported by the record."  See Marshall v. Lonberger, 459 U.S. 422 (1983) (implying a lack of credibility in the absence of an express finding after extensive hearings and support in the record);

---

[2]  In connection with this argument, the Commonwealth argues that Norton's Brady claim in the habeas petition was untimely because the trial court made implicit credibility determinations.  Since we reject the implicit finding argument, we also reject the argument that the Brady claim was untimely.  We hold that Norton's claim was timely under AEDPA.

LeValle v. Delle Rose, 410 U.S. 690, 695 (1973)(implying a ruling where there is "every indication [the trial judge] applied the correct standards."); United States v. Jones, 766 F.2d 270 (7th Cir. 1985)(implying that the trial court found the affidavits incredible, absent an express finding, because only one of the fifteen witnesses had recanted and recantations are treated with great skepticism). In Norton's case, the trial judge did not hold a lengthy hearing on the affidavits or make any findings of fact. Nor was there evidence in the record impugning the credibility of Noel or Rodríguez. Although the trial judge had held Noel incompetent to testify because he refused to answer questions regarding where he was touched, the trial judge never ruled, or suggested, that Noel was incredible. We are unwilling to infer that the trial judge viewed the affiants as incredible when there is nothing in the record, or in the circumstances of this case, to support such an inference.

This is especially true when the language used by the trial court suggests that it did not even consider the credibility of the affidavits. The trial court order stated that Norton "filed a motion for new trial raising the same issues as were raised on the direct appeal or that could have been raised." However, the part of the motion for a new trial dealing with the affidavits involved new evidence that was not available and could not have been raised on direct appeal. This language suggests that the

trial court did not evaluate the affidavits in ruling on the motion for a new trial, much less that the trial court implicitly found the affidavits to be incredible.

In affirming the denial of Norton's motion for new trial, the MAC stated that the trial judge "was not required to accept the [affidavits] as true" and "[i]n light of the fact that much evidence at trial was equally calculated to discredit the victim [Fuentes], the judge could properly regard the affidavits as largely cumulative in their basic effect." Commonwealth v. Norton, 728 N.E.2d 972. These statements can be interpreted as findings of fact.

As previously discussed, a finding that the trial judge viewed the affiants as incredible is an unreasonable determination of the facts. In addition, we agree with the district court that the state court's finding that "the affidavits were necessarily incredible or merely cumulative" is an unreasonable determination of the facts in light of the evidence presented. After all, evidence cannot be cumulative when it goes to an issue that was not known at the time of trial.

It is well established that "impeachment evidence that is merely cumulative . . . is insufficient to establish prejudice under Brady." United States v. García-Torres, 341 F.3d 61 (1st Cir. 2003) citing United States v. Martínez-Medina, 279 F.3d 105 (1st Cir. 2002). A determination that the affidavits were

-11-

cumulative, however, is an unreasonable determination of the facts in light of the evidence in the record. Cf. Conley v. United States, 323 F.3d 7, 30 (1st Cir. 2003)(evidence was cumulative because defendant was already aware of essential facts that would allow him to take advantage of the exculpatory evidence at issue); United States v. García-Torres, 331 F.3d at 71 (evidence was cumulative when there was substantial other evidence of the appellants' involvement in the conspiracy); Lugo v. Muñoz, 682 F.2d 7, 9 (1st Cir. 1982) (evidence was cumulative because the facts which petitioner alleges to have been suppressed were a matter of public record). As a result, we accord no deference to the appellate court's reconstruction of the lower court's decision. See Parker v. Dugger, 498 U.S. 591, 597 (1982) (reviewing court overturned a state court decision not supported by the record using a less rigorous standard under the previous habeas statute).

The trial court made no finding that the affidavits were cumulative nor did it mention the affidavits in denying Norton's motion. As the Commonwealth admitted, there was no other evidence against Fuentes directly establishing that the claims were fabricated. The affidavits, therefore, cannot be classified as cumulative. Further, the MAC claimed that the trial judge "could" properly regard the affidavits as cumulative. It did not hold that the trial court did regard the affidavits as cumulative.

### D.  **<u>Unreasonable Application of Clearly Established Law</u>**

We also agree with the district court that the state court decisions are an unreasonable application of clearly established federal law -- a holding utterly inconsistent with <u>Brady</u>.  It is not always clear when a decision is an unreasonable application of federal law.  "If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application."  <u>McCambridge</u>, 202 F.3d at 36.  An unreasonable application exists, however, when there "is some increment of incorrectness beyond error."  <u>Id.</u> (citation omitted).  "The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  <u>Id.</u>  A state court decision may be "unreasonable if it is devoid of record support for its conclusions or is arbitrary."  <u>Id.</u> at 37 (citing <u>O'Brien</u> v. <u>Dubois</u>, 145 F.3d 16, 25 (1st Cir. 1998)).  For the reasons discussed below, we find the state court's decision arbitrary and devoid of reason.

When addressing a challenge to the legitimacy of a criminal prosecution based upon a failure of the prosecution to disclose exculpatory evidence, courts must consider whether: (1) the evidence is favorable to the accused; (2) the evidence was suppressed by the state; and (3) the petitioner was prejudiced. <u>Strickler</u> v. <u>Greene</u>, 527 U.S. 163, 281-82 (1999).

-13-

First, the affidavits are favorable to the accused because they constitute favorable impeachment evidence, which is a type of evidence covered by the Brady disclosure requirements. Strickler v. Greene, 527 U.S. at 282 n.21. Indeed, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." Giglio v. United States, 405 U.S. 150, 153-54 (1972) (internal quotations and citation omitted). Noel's affidavit established that he "made up the story against [Norton] because my cousin [Fuentes] told me to." The affidavit also established that Fuentes had told Noel that he too "had made up" the story about Norton. Such information is evidence that is clearly favorable to the accused and would have substantially undermined his judgment of guilt if it had been presented at Norton's trial.

Second, it is undisputed that the prosecutor never provided Norton with the information contained in the affidavits.

Third, Norton was prejudiced by the failure to disclose the information contained in the affidavits. Fuentes was the only witness describing the alleged assaults that led to Norton's conviction, thus withholding impeachment evidence that Fuentes lied about the assault was prejudicial to Norton. See Napue v. Illinois, 360 U.S. 264, 269 (1959) (holding that "[t]he jury's estimate of the truthfulness and reliability of a given witness may

-14-

well be determinative of guilt or innocence").  Prejudice only leads to the undoing of a conviction, however, when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, a reasonable probability here being one that is sufficient to undermine confidence in the outcome."  Ellsworth v. Warden, 333 F.3d at 4 (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).[3]  Confidence in the outcome is particularly doubtful when the withheld evidence impeaches a witness whose "testimony is uncorroborated and essential to the conviction."  United States v. Martínez-Medina, 279 F.3d 105, 126 (1st Cir. 2002) (citing Giglio v. United States, 405 U.S. at 154-55).  Fuentes's testimony was uncorroborated and essential to Norton's conviction as he was the

---

[3]  It is true that "[i]nadmissible evidence is by definition not material."  United States v. Ranney, 719 F.2d 1183, 1190 (1st Cir. 1983); but see Ellsworth, 333 F.3d at 5 (holding that "evidence itself inadmissible could be so promising a lead to strong exculpatory evidence that there could be no justification for withholding it.").  The state courts never directly addressed whether the material in Noel's or Rodríguez's affidavits was admissible.  The MAC did say, however, that Rodríguez's affidavit was "one further level of hearsay removed from the allegedly recanting victim," implying that both affidavits were inadmissible hearsay.  Norton III, 728 N.E.2d at 972.  Noel's affidavit is admissible, however, because of the prior inconsistent statement exception to the hearsay rule.  See Commonwealth v. Daye, 469 N.E.2d 483, 490-91 (Mass. 1984) (restating the established rule that prior inconsistent statements are admissible for the purpose of impeaching the credibility of a witness's testimony). Rodríguez's affidavit is admissible because personal observations that the prosecutor improperly coached the witness are not hearsay. See Commonwealth v. Ortiz-Soto, 731 N.E.2d 553, 555 n.2 (Mass. App. Ct. 2000) (stating that personal observations are not hearsay).

only witness to testify to the alleged indecent assaults. Therefore, there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome could have been different.

## III.  Conclusion

We therefore affirm the district court's conclusion that habeas be granted.

**Affirmed**.