McCarthy v. Warden, NHSP          CV-03-396-SM  11/29/04
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


William D. McCarthy,
      Petitioner

      v.                                  Civil No. 03-396-SM
                                          Opinion No. 2004 DNH 171
Jane Coplan, Warden,
New Hampshire State Prison
for Men,
      Respondent


                           O R D E R


     William D. McCarthy, a state prisoner, petitions for a writ

of habeas corpus.  18 U.S.C. § 2254.  Preliminary review by the

Magistrate Judge has reduced McCarthy's petition to nine claims.[1]

Before the court is respondent's motion for summary judgment

which, for the reasons given, is granted.



                          Background

     The historical and procedural background is set out in

detail in respondent's memorandum of law (document no. 13).


_____

     [1] Petitioner's two unexhausted Fourth Amendment claims are
not cognizable in a federal habeas corpus action.

Petitioner has not challenged any facts asserted in respondent's motion.[2]

In brief, petitioner's claims arise from the circumstances under which he entered four "naked" guilty pleas and one <u>Alford</u> plea[3] to five state criminal charges.[4]  Specifically, he objects to: (1) the 377-day delay between the date on which his plea and sentencing were supposed to have occurred (April 5, 2001) and the date on which they actually occurred (April 17, 2002);[5] (2) the

_____

[2] In paragraphs 1,A through 1,F of his objection to respondent's motion for summary judgment, petitioner makes several legal arguments concerning the events described in respondent's background statement, but he does not dispute any of the facts.

[3] <u>See</u> <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

[4] Petitioner's charges arose from separate incidents that took place: (1) on July 28, 1999 (resulting in charges of reckless conduct, disobeying a police officer, and driving while certified as a habitual offender, to which petitioner pled guilty); (2) on March 23, 2000 (resulting in another charge of driving while certified as a habitual offender, to which he pled guilty); and (3) between May 15 and June 23, 2000 (resulting in a charge of theft by deception, to which he entered an <u>Alford</u> plea.)  Petitioner was required to plead without an agreement because he had, in July, 2000, withdrawn a notice of intent to plead guilty after having negotiated a plea and sentencing agreement with the State.

[5] That delay resulted from mistaken identity.  On April 4, 2001, the day before petitioner was due in state court for his plea and sentencing, he was taken into custody on a federal

2

State's handling of his rights under the Interstate Agreement on Detainers ("IAD"); (3) the allegedly unlawful inducement/coercion of involuntary pleas from him;[6] (4) his failure to receive proper credit for pre-trial detention; and (5) his attorney's failure to object to and/or the attorney's complicity in the foregoing violations of his rights.

In his March 16, 2004, order, the Magistrate Judge described McCarthy's claims as follows:

> A. His plea was involuntary as it was obtained by coercion and threats in violation of McCarthy's due process rights;

---

charge and placed in federal pre-trial detention in the Merrimack County House of Corrections. The next day, another incarcerated individual, also named William McCarthy, was transported in error to the courthouse at which petitioner's plea and sentencing were to take place. The "correct" William McCarthy remained in federal custody, pled guilty to a federal charge on June 25, 2001, and was sentenced in federal court on September 25, 2001. On October 4, 2001, he was moved to a federal facility at Fort Devans, Massachusetts. On November 2, 2001, he filed pleadings pursuant to the Interstate Agreement on Detainers, which resulted in his transfer to New Hampshire, on February 11, 2002.

[6] According to petitioner, the assistant county attorney unlawfully induced or coerced him into pleading guilty by telling him, at the sentencing hearing, that if he decided not to plead on that date, the State would bring additional charges against him.

B.  The prosecutor engaged in misconduct by coercing him to plead guilty with threats in violation of McCarthy's due process rights;

C.  He was denied his Sixth Amendment right to the effective assistance of counsel by his attorney's complicity with the prosecutor's coercion and threats;

D.  The 377-day delay before he was actually brought to court for his plea and sentencing hearing violated his Sixth Amendment right to a speedy trial and disposition;

E.  The 377-day delay violated his rights under the Interstate Agreement on Detainers;

F.  He was denied his Sixth Amendment right to the effective assistance of counsel when his attorney failed to contact him for more than a year prior to his plea and sentencing date;

G.  He was denied his Sixth Amendment right to the effective assistance of counsel when his attorney failed to have his plea and sentencing date expedited after he was not transported to the first scheduled date;

H.  His sentence is unconstitutional in that he has not been properly credited with time served in custody prior to his plea and sentencing; and

I.  The failure to grant him credit for time he served pretrial violates the original plea agreement and violates his Fourteenth Amendment right to due process.

Stated simply, petitioner contends that his current incarceration is unconstitutional because: (1) had he been sentenced on his state charges on or shortly after April 5, 2001, he would have been able to serve his September 25, 2001, federal sentence

4

concurrently with his state sentence rather than serving his state sentence after being released from the custodial portion of his federal sentence; (2) his April 17, 2002, pleas were involuntary because they were induced by the prosecutor's threat that he might consider bringing additional, unrelated charges against petitioner if he did not plead guilty on that day; and (3) he has been improperly denied credit for time served in pre-trial detention.

**The Legal Standard**

Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly limited the power of the federal courts to grant habeas corpus relief to state prisoners. A federal court may disturb a state conviction when the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 399

(2000). (As this case has never involved any factfinding, §
2254(d)(2) is inapplicable.[7])

Regarding the distinction between decisions "contrary to"
clearly established federal law and those involving an
"unreasonable application" of federal law, the United States
Supreme Court has stated:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has
> on a set of materially indistinguishable facts. Under
> the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies
> the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies
> that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.[8]

---

[7] Under § 2254(d)(2), habeas corpus relief may be granted
when a state court adjudication "resulted in a decision that was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding."

[8] Regarding just how unreasonable an application of legal
principles must be to warrant habeas relief, respondent should
note for future reference that the standard articulated in
Williams v. Matesanz, 230 F.3d 421 (1st Cir. 2000), "outside the
universe of plausible, credible outcomes," id. at 425, was
overruled by McCambridge v. Hall, 303 F.3d 24, 37 (1st Cir.
2002).

Of course, "AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings.'" Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); citing Ellsworth v. Warden, 333 F.3d 1,6, (1st Cir. 2003)). "If a claim was not adjudicated on the merits in a state court proceeding, then the issue is reviewed de novo." Norton, 351 F.3d at 5 (citation omitted).

Here, the status of McCarthy's various claims is somewhat murky. They are all exhausted, having been fairly presented to the New Hampshire Supreme Court in a notice of appeal. However, the Supreme Court declined McCarthy's appeal, so there has been no adjudication on the merits by that court. But, after he was sentenced on the state charges, McCarthy filed numerous pleadings in state court. Those included, but are not limited to, the following:

> (1) a May 16, 2002, motion for pre-trial confinement credits (Resp't's Mot. Summ. J., Ex. 2);[9]

---

[9] That motion was denied "for the reasons set forth in the State's objection," on June 5, 2002. (Resp't's Mot. Summ. J., Ex. 5.)

7

(2) a June 7, 2002, motion for dismissal of charges and release from prison, which claimed violation of the Interstate Agreement on Detainers (Resp't's Mot. Summ. J., Ex. 6);[10]

(3) a June 28, 2002, motion to withdraw his guilty pleas and have the charges against him vacated, which claimed violations of petitioner's right to the effective assistance of counsel, coercion by his counsel and the prosecutor, and violation of the IAD (Resp't's Mot. Summ. J., Ex. 9);[11]

(4) a June 2002, motion to amend sentence for education (Resp't's Mot. Summ. J., Ex. 10);[12]

(5) a June 18, 2002, petition for a writ of habeas corpus filed in the Superior Court in Rockingham County;[13]

(6) a July 3, 2002, petition for a writ of habeas corpus filed in the Superior Court in Belknap County, which claimed coercion of petitioner's guilty pleas and violation of the IAD, and which cited Barker v. Wingo, 407 U.S. 514 (1972), the leading Supreme Court case on the Sixth Amendment right to a speedy trial (Resp't's Mot. Summ. J., Ex. 12);[14]

---

[10] The record does not include the court's ruling.

[11] The record does not include the court's ruling.

[12] The record does not include the court's ruling.

[13] The record does not include the Rockingham County habeas petition. It was denied, without a hearing, by order dated June 25, 2002. (Resp't's Mot. Summ. J., Ex. 14.)

[14] That petition was denied, "for all the reasons set forth in the State's objection," on July 30, 2002. (Resp't's Mot. Summ. J., Ex. 17.) Petitioner's motion to reconsider was denied on August 23, 2002. (Resp't's Mot. Summ. J., Ex. 19.)

8

(7) a July 10, 2002, motion to withdraw guilty pleas, dismiss charges, and release prisoner, which claimed coercion of petitioner's guilty pleas, violation of the IAD, and violation of petitioner's constitutional rights to a speedy trial and to the effective assistance of counsel (Resp't's Mot. Summ. J., Ex. 13);[15]

(8) a November 3, 2002, motion for pretrial confinement credit (Resp't's Mot. Summ. J., Ex. 21);[16]

(9) a December 16, 2002, motion to amend sentence in which petitioner conceded that he was "not technically entitled to pre-trial credit under the relevant statute (Resp't's Mot. Summ. J., Ex. 24);"[17]

(10) a January 20, 2003, motion to withdraw pleas, vacate sentences, and dismiss charges, that superseded the July 10, 2002, motion;[18]

---

[15] The record does not include the court's ruling, but the motion appears to have been withdrawn, at McCarthy's request.

[16] That motion was denied by order dated December 5, 2002, which stated: "Motion DENIED. The defendant cannot receive pre-trial confinement credit for time spent in the custody of Merrimack County, awaiting disposition of charges in that county; any pre-trial confinement credit for incarceration in Merrimack County should more properly be credited to his Merrimack sentences." (Resp't's Mot. Summ. J., Ex. 23.)

[17] That motion was denied by order dated December 24, 2002. (Resp't's Mot. Summ. J., Ex. 26.)

[18] The record does not include the motion, but does contain Justice Coffey's four-page order, issued after a hearing. In her order, Justice Coffey held that: "the defendant knowingly, and intelligently entered a plea and was sentenced." (Resp't's Mot. Summ. J., Ex. 30.)

Based upon the foregoing procedural history, complicated by petitioner's numerous pleadings and consisting largely of margin orders, it is difficult to determine with precision which of petitioner's claims have been adjudicated on the merits and which have not.  For that reason, petitioner's claims will be reviewed de novo.


**Discussion**

The Magistrate Judge has identified nine distinct claims in McCarthy's petition; they involve four issues: (1) the Interstate Agreement on Detainers; (2) petitioner's Sixth Amendment right to a speedy trial; (3) voluntariness of petitioner's pleas; and (4) calculation of credit for petitioner's pre-trial detention.


1. Interstate Agreement on Detainers

Petitioner's incarceration is not the result of a violation of his rights under the Interstate Agreement on Detainers.  As petitioner concedes, his April 17, 2002, plea and sentencing hearing was held within the 180-day limit required by Article III of the IAD.  See N.H. Rev. Stat. Ann. ("RSA") § 606-A:1.  He is mistaken in his belief that his situation was governed by the 120-day deadline set out in Article IV.  The IAD does not apply

to pre-trial detainees nor does it apply to "those who have been convicted but not yet sentenced." United States v. Currier, 836 F.2d 11, 16 (1st Cir. 1987) (citations omitted). Because "[t]he terms of the Agreement apply exclusively to prisoners who are actually serving their sentences," id., petitioner had no rights under the IAD until September 25, 2001, the date on which he was sentenced on his federal conviction. Any detainer the State may have filed before that date was without effect for IAD purposes. See id. No effective Article IV request was ever made. Thus, the only triggering event relevant to petitioner's rights under the IAD was his own Article III request, to which the State responded in a timely manner. For these reasons, petitioner is not entitled to habeas corpus relief based upon claim E.[19]

---

[19] It is not clear whether claims F and G (asserting ineffective assistance of counsel) pertain to petitioner's IAD claim, his Sixth Amendment speedy-trial claim, or both. In any event, because petitioner had no IAD rights until after he began serving his federal sentence, his attorney could not have invoked the IAD to insure that he was sentenced on his state charges before he was sentenced on his federal charges. Therefore, petitioner's incarceration could not be the result of ineffective assistance of counsel related to litigation of his IAD rights.

11

## 2. Constitutional Right to a Speedy Trial

Petitioner's incarceration is not the result of a violation of his constitutional right to a speedy trial.

Criminal defendants are guaranteed the right to a speedy trial by the Sixth Amendment to the United States constitution. Barker v. Wingo, 407 U.S. 514, 515 (1972). When ruling upon a speedy-trial claim, a court must consider: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; (4) and the prejudice to the defendant caused by the delay." United States v. Maxwell, 351 F.3d 35, 40 (1st Cir. 2003) (quoting Barker, 407 U.S. at 530). Deciding Sixth Amendment speedy-trial claims is a notoriously case-specific undertaking. See Barker, 407 U.S. at 530. Petitioner has identified no case in which a speedy-trial violation has been found under identical or even substantially similar circumstances. Accordingly, the court will consider the facts in light of the legal standards described in Barker.

McCarthy's speedy-trial claim is based upon the 377-day delay between the date on which his plea and sentencing were originally scheduled, April 5, 2001, and the date on which they

12

actually occurred, April 17, 2002.  "[T]he weight given in the analysis to the length of the delay depends upon the extent to which the delay exceeds the bare minimum considered presumptively prejudicial, which is one year."  Maxwell, 351 F.3d at 40 (citation and internal quotation marks omitted).  Here, the delay was one year and twelve days, just over the threshold of presumptive prejudice.

The second factor, reason for the delay, entails a consideration of which party is responsible for the delay, see, e.g., RaShad v. Walsh, 300 F.3d 27, 36-39 (1st Cir. 2002), and, when the government is responsible, whether it acted deliberately to gain a tactical advantage at trial, acted merely negligently, or had a legitimate reason for its actions, see Barker, 407 U.S. at 531.  Under the reasoning of RaShad, 300 F.3d at 36-38 (citing Smith v. Hooey, 393 U.S. 374 (1969)), the State is arguably responsible for some or all of the delay that occurred while petitioner was in federal custody.  However, by all accounts, petitioner was transferred to state custody on February 11, 2002, in order to stand trial on February 25, a date well in advance of the one-year anniversary of the plea and sentencing hearing to which he was not transported.  Because the trial date was

13

continued from February 25 at petitioner's request, he is responsible for the remainder of the delay. Therefore, the State is responsible, at most, for a delay of less than eleven months.[20] Regarding the State's motivation for delay, there is no reason to conclude that the State delayed adjudication of the charges against petitioner in order to gain a tactical advantage at trial, because petitioner had filed a notice of intent to plead guilty prior to the April 5, 2001, hearing date, thus giving the State no reason to believe that petitioner intended to go to trial. Accordingly, the reason-for-delay factor weighs in the State's favor.

The third factor, assertion of the speedy-trial right, involves analysis of "the timeliness and frequency of the defendant's assertions of his speedy trial right." RaShad, 300 F.3d at 34 (citing Barker, 407 U.S. at 529). This is not a case

---

[20] Furthermore, while petitioner was in federal custody, from April 4, 2001, through February 11, 2002, he was in pre-trial detention. He was not subject to the IAD's provisions until September 25. From November 2 onward, the State was responding, properly, to petitioner's IAD request. A strong argument could be made that the only part of petitioner's pre-trial detention for which the State bears responsibility, for purposes of speedy-trial calculation, is the period from September 25 through November 2, during which the State could have, but did not, submit an Article IV request under the IAD.

14

like Smith, in which the defendant was denied a trial despite having repeatedly asserted his speedy trial rights over the course of six years. RaShad, 300 F.3d at 37. Rather, as soon as petitioner made his IAD request, both the sending state and the receiving state promptly performed their duties under the IAD. Petitioner's plea and sentencing hearing were held within the statutory time period. Thus, this factor also favors the State.

The "fourth factor is prejudice to the defendant." Barker, 407 U.S. at 532. A defendant's right to a speedy trial is intended: "(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. The third of these factors is the most important. Id. Petitioner does not, however, claim that he was prejudiced in his ability to mount a defense. Rather, he claims prejudice arising from his inability to plead to the state charges before sentencing on the federal charges, thus losing an opportunity to have his federal sentence imposed to run concurrently with the state sentence.

15

The Supreme Court has opined "that a man already in prison under a lawful sentence [could] suffer from 'undue and oppressive incarceration prior to trial' . . . [due to] the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving," Smith, 393 U.S. at 378 (citing Schnider, "Interjurisdictional Conflict and the Right to a Speedy Trial," 35 U. CIN. L. REV. 179, 182-83 (1966)). However, such claims are "highly speculative and fall[] far short of a demonstration of actual prejudice," United States v. Cabral, 475 F.2d 715, 720 (1st Cir. 1973) (citation omitted); see also RaShad, 300 F.3d at 43 n.11.

While petitioner has offered evidence that the United States Attorney would not have opposed a concurrent sentence in his federal case, the sentence the federal prosecutor would have agreed to and, more to the point, the sentence the court would have imposed, are two different things. Moreover, in a situation such as this, the risk of prejudice, as claimed, was diminished considerably by the state court's own ability to take petitioner's federal sentence into account when sentencing him on his state charges – the state court could have imposed a concurrent state sentence. See Cabral, 475 F.2d at 720 ("The

16

court in the instant case could have suspended sentence if it deemed appellant to have already served enough time.").

Petitioner is not currently incarcerated as a result of a violation of his Sixth Amendment speedy-trial rights. Thus, he is not entitled to habeas corpus relief based upon claim D.

Petitioner is also not entitled to relief based upon claims F and G, in which he asserts that his counsel was ineffective in asserting his speedy-trial rights. He was not prejudiced by his attorney's performance and, as a result, does not meet the test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). The only prejudice petitioner claims is loss of a speculative opportunity to serve his federal sentence concurrently with his state sentence. But it is not at all clear that petitioner's attorney could have rescheduled the state plea and sentencing hearing prior to September 25, 2001, and, in any event, the possibility that the federal court might have imposed its sentence to run concurrently is far too speculative to support a claim of ineffective assistance of counsel.

17

Accordingly, petitioner is not entitled to habeas corpus relief based upon claims F and G.

3. Voluntariness of Petitioner's Pleas

Petitioner's incarceration is not the result of an unconstitutionally coerced guilty plea. He claims that his guilty pleas and his Alford plea were obtained by coercion and threats because, during his plea and sentencing hearing, the prosecutor communicated his intention to investigate additional potentially criminal conduct if petitioner withdrew his notice of intent to plead guilty and exercised his constitutional right to a trial.[21] Respondent counters that petitioner's Boykin[22] colloquy defeats any subsequent claim of involuntariness.

---

[21] As a purely factual matter, petitioner's argument is implausible. It is undisputed that he filed a notice of intent to plead guilty prior to the April 5, 2001, hearing date, and he appeared in court on April 17, 2002, after continuing his trial date and indicating, yet again, his intention to plead guilty. Moreover, all of the acts by the prosecutor that petitioner characterizes as threatening or coercive took place on the day of his plea and sentencing, after he had twice indicated his intent to plead. Thus, to the extent the prosecutor's conduct induced any decision by petitioner, it was not his decision to plead guilty (which he had made at least twice prior to April 17), but, rather, his decision not to attempt to withdraw his notice of intent to plead guilty.

[22] See Boykin v. Alabama, 395 U.S. 238 (1969).

18

The constitutional standards governing the circumstances under which a criminal defendant may enter a binding guilty plea are well established:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Mabry v. Johnson, 467 U.S. 504, 509 (1984) (quoting Brady v. United States, 397 U.S. 742, 755 (1970)) (internal quotation marks omitted). "[A] guilty plea is involuntary and therefore invalid if it is obtained 'by actual or threatened physical harm or by coercion overbearing the will of the defendant.'" United States v. Martinez-Molina, 64 F.3d 719, 732 (1st Cir. 1995) (quoting Brady, 397 U.S. at 750). In other words, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." Machibroda v. United States, 368 U.S. 487, 493 (1962). Regarding evidence of voluntariness, a defendant's "statements in open court during a plea hearing 'carry a strong presumption of verity.'" Martinez-

19

Molina, 64 F.3d at 733 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Here, the sentencing court engaged petitioner in a full Boykin colloquy, during which he stated, under oath, that no one had made any threat against him or any member of his family to induce his pleas. Petitioner's statements in open court create a strong presumption that his pleas were voluntary. See Martinez-Molina, 64 F.3d at 733. Moreover, petitioner's characterization of the "threats" and "coercion" directed against him, i.e., the "threat" of additional charges, does not describe any promise or threat by the prosecutor that was improper by virtue of being unrelated to the prosecutor's business. See Mabry, 467 U.S. at 509. To the contrary, the possibility of bringing additional criminal charges falls squarely within the realm of the prosecutor's business.[23] Thus, none of petitioner's allegations, even if true, constitute threats or coercion under the standard established by Mabry.

_____

[23] That those charges were not viable – the alleged criminal activity took place entirely within Massachusetts – did not make it improper for the prosecutor to raise the possibility but, if anything, undermined the force of the "threat."

20

Because petitioner's pleas were not the product of unconstitutional coercion, he is not entitled to habeas corpus relief based upon claims A or B.  Moreover, because those claims fail, petitioner's claim C, asserting ineffective assistance of counsel arising out of the conduct of the plea and sentencing hearing, must necessarily fail as well.

## 4. Calculation of Credit for Pre-Trial Confinement

Petitioner's incarceration is not the result of a constitutional violation arising from an improper calculation of credit for pre-trial confinement.  Petitioner argues that he should have been given credit against his state sentence for the time he served between April 4, 2001, and September 25, 2001.[24] The record is clear that during that time, petitioner was in federal custody, and that he received full credit for that time against his federal sentence.  (See Resp't's Mot. Summ. J., Ex. 3 at 4.)  Because petitioner has identified no constitutional or other federally established right to have his period of federal pre-trial detention credited against both his federal and state

---

[24] In a state-court pleading dated December 16, 2002, petitioner conceded, correctly, that he was "not technically entitled to pre-trial credit under the relevant statute."

sentences, petitioner is not entitled to habeas corpus relief based upon claims H and I.[25]

## Conclusion

For the reasons given, respondent's motion for summary judgment (document no. 13) is granted, and McCarthy's petition for a writ of habeas corpus is dismissed. The clerk of court shall enter judgment in accordance with this opinion and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 29, 2004

cc:  Elizabeth A. Dunn, Esq.
     William D. McCarthy

_____

[25] Petitioner's contention (made as a part of claim I) that his rights were violated by the State's breach of the original plea agreement is unavailing. Petitioner himself withdrew from that agreement before it was executed, and "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." Mabry, 467 U.S. at 507 (footnote omitted).