James Michael SHELTON, Appellant,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Appellee.

No. 77–1921.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1978.

Decided June 6, 1978.

David R. Freeman, Fed. Public Defender and Benjamin D. Entine (argued), Asst. Fed. Public Defender, Kansas City, Mo., on brief for appellant.

James Michael Shelton, pro se.

Ronald S. Reed, Jr., U. S. Atty., and Frederick O. Griffin, Jr. (argued), Asst. U. S. Atty., Kansas City, Mo., on brief for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and MacLAUGHLIN, District Judge.*

MacLAUGHLIN, District Judge.

James Michael Shelton appeals from a judgment of the United States District Court for the Western District of Missouri dismissing his petition for a writ of habeas corpus sought pursuant to 28 U.S.C. § 2241. We have considered the merits of the appeal on the basis of the facts alleged in the petition and the sworn affidavit of the petitioner, and have concluded that the matter should be remanded for an evidentiary hearing.

Shelton avers that on November 28, 1969, he was arrested by Tennessee State authorities for house burglary and larceny and confined in the Dickson County Jail while awaiting trial on the charges. A warrant for violation of the Dyer Act, 18 U.S.C. § 2312, which ultimately culminated in the sentences Shelton is presently serving, was simultaneously lodged with the Dickson County authorities.

* The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota, sitting by designation.

On January 9, 1970, Shelton was convicted in Tennessee County Circuit Court of the state charges and sentenced to a term of three years in the Tennessee State Penitentiary. On January 12, 1970, he was removed by the authority of a writ of habeas corpus ad prosequendum to the United States District Court for the Middle District of Tennessee where he pled guilty to two violations of the Dyer Act and was sentenced to two years and six months under each count, the sentences to run concurrently with each other.

It was not until April 9, 1977, that Shelton was arrested for service of the sentences which had been imposed on January 12, 1970. Shelton contends that the failure of the government to assert jurisdiction over him during the seven year and three month period which lapsed between the times of imposition of sentence and arrest constitute a waiver of those sentences by the government or, at the very least, circumstances which warrant an evidentiary hearing on the propriety of the government's inaction.

Returning to the chronology of events, by the time Shelton was released from the Tennessee State Penitentiary in August, 1972, apparently no detainer for the pending Dyer Act sentences had been lodged with his file. Shelton successfully completed his parole term and was discharged from supervision.

In April, 1973, Shelton began serving an eleven month and twenty-nine day sentence at the Dickson County Jail. The petitioner claims that during this time he was in visual contact with the same agents who had prosecuted him on the Dyer Act charges in 1970. Records outlining the offense and the sentence of each inmate are said to have been routinely submitted to the Federal Bureau of Investigation during the nine months that Shelton was confined at the jail. At the time of Shelton's release, no federal detainer had been filed with the Dickson County authorities.

On January 28, 1974, Shelton was convicted in the Dickson County Court of selling amphetamines and sentenced to a term of three years. He was released from the Tennessee State Penitentiary in June, 1976, no federal detainer having been lodged in the interval.

Four months later, on October 31, 1976, Shelton was arrested by the Lebanon City Police Department, Lebanon, Kentucky. It is claimed that a routine check was made through the National Crime Information Computer and failed to reveal any outstanding warrants for Shelton.

Rumors were apparently circulating in November, 1976, that Shelton was wanted by the federal authorities. Shelton's mother allegedly called the Dickson County Sheriff's Department and was told that there were no warrants out for Shelton and that Shelton was not wanted by the federal authorities.

Two months later Shelton's mother again called the Dickson County Sheriff's Office and was allegedly told that federal agents had been in the Sheriff's Office inquiring as to Shelton's whereabouts in respect to a civil action filed in the Middle District of Tennessee against Joel Plummer.

In April of 1977 Shelton was arrested on two outstanding traffic citations by the Nashville Metropolitan Police Department. Another check with the National Crime Information Computer apparently revealed nothing.

On April 9, 1977, Shelton was arrested for service of the Dyer Act sentences. Shelton claims that when he inquired into the matter, Agent Don Birdwell of the Federal Bureau of Investigation stated that the Marshals had been holding the commitment order for the past seven years.

The record indicates that on January 15, 1970, two copies of the Judgment and Commitment Order were transmitted to the U. S. Marshals. On January 20, 1970, a warrant for the arrest of Shelton was returned unexecuted. There is no further notation in the official record regarding attempts to execute the sentences until April, 1977, when the Judgment and Commitment were returned executed after the petitioner was delivered to the Medical Center for Federal

Prisoners at Springfield, Missouri, where he is presently confined.

On May 11, 1977, Shelton, pro se, petitioned the United States District Court for the Western District of Missouri for a writ of habeas corpus contending that the delayed execution of the judgment and commitment papers constituted a violation of his right to due process of law. The matter was referred to a United States Magistrate pursuant to 28 U.S.C. § 636(b) who recommended that the petitioner be denied leave to proceed in forma pauperis and that the petition be dismissed. The District Court accepted the recommendation, reasoning that the waiver theory was inapplicable to the facts of Shelton's case and dismissed the petition without an evidentiary hearing.

On appeal, Shelton contends that the District Court erred in dismissing his petition. He urges this Court to direct his immediate release on the ground that the allegations of his petition conclusively establish a waiver of jurisdiction over him by the government. In the alternative, he requests that the matter should be remanded to the District Court for an evidentiary hearing.

 A petition is cognizable in habeas corpus when it alleges a denial of due process resulting in a claim of illegal detention by arbitrary government action. *Wilwording v. Swenson*, 502 F.2d 844, 847–48 (8th Cir. 1974). *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973). To be sufficient, the petition must describe a substantial infringement of a constitutional right and a factual statement which, if true, would entitle the petitioner to relief.

We thus turn to the question of the sufficiency of the factual allegations set forth in Shelton's petition. The principal issue raised is whether or not the circumstances alleged to surround the government's failure to apprehend Shelton, if true, are suffi-

cient to establish that the government has waived jurisdiction over Shelton for the purposes of service of the Dyer Act sentences.

The waiver theory was developed by the Court of Appeals for the Fifth Circuit in *Shields v. Beto*, 370 F.2d 1003, 1005 (1967), and thereafter refined in *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973). Distilled to its essence, the theory provides that in order to establish waiver,

. . . it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of such action or inaction. *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973).

The District Court found that Shelton's Dyer Act sentences were not vitiated by the government's inaction because the alleged facts only presented a situation in which there was "a failure to file a detainer, and a failure to apprehend and commit the petitioner" and thus did not constitute gross negligence or affirmative wrong.[1] We need not address the accuracy of that conclusion since we find that the facts suggest more than a mere failure to file a detainer.

In the instant case, unlike *United States v. Vann*, 207 F.Supp. 108, 114 (E.D.N.Y. 1962) and *Bailey v. Ciccone*, 420 F.Supp. 344, 348 (W.D.Mo.1976), the petitioner's judgment and commitment forms lay unexecuted in the hands of the Marshals for over seven years. The only officially recorded activity was the return of an unexecuted arrest warrant within five days after the imposition of the Dyer Act sentences. This warrant was issued although the Marshals had brought Shelton into federal court

---

1. 18 U.S.C. § 3568 provides that "[t]he sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for the service of such sentence." Accordingly, if there was no waiver of jurisdiction over Shelton, the District Court reasoned that his 1970 Dyer Act sentences did not commence until he was received at a place of confinement in April of 1977.

for sentencing pursuant to a writ of habeas corpus ad prosequendum from the Dickson County Jail where they presumably returned him after sentencing.

Shelton was confined in state and county custody during the seven-year period on three separate occasions, but no federal detainer was lodged with his records. In addition, two checks for information were made through the National Crime Information Computer and Shelton's name was submitted to the Federal Bureau of Investigation, yet no outstanding warrants were revealed. After this action was commenced, the U.S. Marshals apparently indicated that they had previously placed the warrant with state authorities, but that it was not forwarded to the proper officials at the Tennessee correctional institutions. At oral argument the government conceded that whether the Marshals had inadvertently lodged the detainer with the wrong officials or failed to file it at all, such malfeasance or nonfeasance constituted negligence.

From April, 1973, through December, 1973, Shelton allegedly was in visual contact with the same agents who had prosecuted him on the federal charges in January, 1970. Shelton claims that his mother contacted the Dickson County Sheriff's Office in 1976 and 1977 and was informed that there were no outstanding warrants. Approximately three months prior to his arrest Shelton's mother was told that federal agents had been inquiring as to Shelton's whereabouts with respect to a civil action in Tennessee. At the time of his arrest, Shelton was living openly under his own name and was gainfully employed. After he was taken into custody Shelton was told that the U.S. Marshal had been holding the commitment order against him for seven years.

■ These allegations permit an inference that although aware of Shelton's whereabouts, the Marshals purposely or out of extreme neglect did not attempt to execute the judgment and commitment papers for seven years. The claims also suggest that the Marshals may have chosen April, 1977, as the time to apprehend Shelton in response to the civil action in Tennessee. Such inferences, if proven to be true, constitute gross negligence or an arbitrary and unwarranted exercise of their powers by the U.S. Marshals.

■ The Marshals are ministerial officers who do not have the discretionary power to determine when the appropriate time has come for service of a prisoner's sentence. Any other conclusion would give the Marshals "power more arbitrary and capricious than any known in the law . . . Such authority is not even granted to courts of justice, let alone their ministerial officers." *Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937).

The waiver theory encourages responsibility and accountability on the part of the Marshals to the extent that it deters the arbitrary exercise of their power. In addition, the theory encourages the prompt rehabilitation of defendants. It is based on the philosophy that a defendant should be allowed to do his time, live down his past, and reestablish himself. Permitting a sentence to go unexecuted does not encourage rehabilitation. *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930). The instant case demonstrates the problem. At the time of his arrest in April, 1977, Shelton was living openly under his own name and was gainfully employed. The arrest interrupted his reintegration into the community. See, *Lanier v. Williams*, 361 F.Supp. 944, 946 (E.D. N.C.1973).

■ The fundamental principle of a petition for a writ of habeas corpus is that "government must always be accountable to the judiciary for a man's imprisonment" and that the restraints on liberty must be removed if the imprisonment does not conform to the basic requirements of law. *Fay v. Noia*, 372 U.S. 391, 401–402, 83 S.Ct. 822, 829, 9 L.Ed.2d 837 (1963). When the facts alleged in a habeas petition would justify relief if true, or when a factual dispute arises as to whether or not a constitutional right is being denied, the District Court must grant an evidentiary hearing. *Willis v. Ciccone*, 506 F.2d at 1016, 1019. The instant petition and accompanying affidavit

set forth sufficient facts to permit the inference that Shelton has been denied due process and thus has cause to challenge the legality of his custody under the circumstances. *Preiser v. Rodriguez*, 411 U.S. at 484, 93 S.Ct. at 1833, 36 L.Ed.2d 439.

Accordingly, we reverse and remand for an evidentiary hearing to explore the merits of petitioner's claims.