Sanchez v. Warden, NHSP                    CV-04-083-JD  08/09/04  P
                  UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Miguel Sanchez

        v.                              Civil No. 04-083-JD
                                        Opinion No. 2004 DNH 118
Warden, New Hampshire
State Prison


                            O R D E R


        Miguel Sanchez, proceeding pro se, seeks habeas corpus

relief, pursuant to 28 U.S.C. § 2254, to correct his sentence as

calculated and imposed by the state court.  Sanchez contends that

his sentence is improper and in violation of due process because

he was not given credit for ninety-six days of pretrial

confinement and because he was not given credit for time that

elapsed while he was erroneously at liberty.[1]  The warden moves

for summary judgment, acknowledging that Sanchez is entitled to

credit for an additional ninety-six days of pretrial confinement

but challenging his claim for credit for the time he was

_____

        [1]Sanchez also alleged that his counsel was constitutionally
ineffective at his resentencing.  That issue was not identified
as a claim in the order on preliminary review, and Sanchez did
not move to amend his petition, as was required to preserve
claims that were not included in the order on preliminary review.
As a result, the warden did not address the ineffective
assistance of counsel claim in her motion for summary judgment.
Sanchez did not raise the claim in his response or in his own
motion for summary judgment.

erroneously at liberty.

Background

Miguel Sanchez was arrested in November of 1995 on two charges of possession of controlled drugs with intent to sell, and he was released on bail at the end of the month. In December he was arrested on a domestic violence charge and served fifteen days in the Hillsborough House of Corrections. In January 1996, while he was out on bail on the state charges, Sanchez was arrested on a federal charge of making a false statement on a passport application.

Sanchez was taken into federal custody on January 19, 1996. On April 1, 1996, he was convicted on the federal charges and was sentenced to six months incarceration at the federal prison in Fort Dix, New Jersey. On May 29, 1996, two days before his release date on his federal sentence, Sanchez was transferred to the Hillsborough County House of Corrections pursuant to the Interstate Agreement on Detainers. He was convicted on the two drug possession charges on March 25, 1997, and was sentenced on May 9, 1997, to seven-and-a-half to fifteen years in the New Hampshire State Prison on one charge with the same sentence on the other charge suspended.

On June 10, 1997, the Hillsborough County Sheriff's

2

Department transported Sanchez from the New Hampshire State Prison back to Fort Dix, New Jersey, to complete his federal sentence. When Sheriff's Department officers arrived with Sanchez, however, the federal authorities told them that his sentence had expired a year earlier. The Sheriff's Department officers had only the mittimus relating to Sanchez's suspended sentence so they erroneously thought that he had no sentence to serve in a New Hampshire prison. They released Sanchez in New Jersey.

Sanchez provides additional information about his release in an affidavit he submitted with his habeas petition. He states that when the officers told him that he was free to go in New Jersey, he told them that he did not understand. They nevertheless insisted that he was free to go. He asked to be taken back to New Hampshire because he had family in Massachusetts and friends in New Hampshire, but the officers refused. When Sanchez explained to them that he had no money, no identification, no transportation, and only a check from the prison that had to be cashed in New Hampshire, they told him to get out of the car and not to come back to New Hampshire. Sanchez states that the officers left him by the side of the road in front of a restaurant.

Sanchez states that he went into the restaurant and told his

story to the patrons.  One man agreed to drive him to the train station in Philadelphia, which he did, and he gave him five dollars.  Sanchez did not have money to buy a ticket, but he says that the conductor let him stay on the train after hearing his story.  The conductor gave him an address to send the money for his ticket.  Once in Boston, a friend met Sanchez and drove him to Manchester where he cashed his prison check.  He apparently stayed in Massachusetts thereafter.

On June 17, 1997, the Sheriff's Department realized they had made a mistake and a warrant for Sanchez's arrest was issued. On September 1, 1997, Sanchez was arrested in Massachusetts on a charge of attempted kidnaping and giving a false name.  Because he was using a false name, the New Hampshire arrest warrant against him did not come up at that time.  When his true identity surfaced in December of 1997, he was arrested on the Hillsborough County warrant as a fugitive from justice.  He was convicted on the Massachusetts charge of attempted kidnaping on April 21, 1998, and was sentenced to two-and-a-half years in the Suffolk County House of Correction in Massachusetts.  While incarcerated in Massachusetts, Sanchez fought extradition to New Hampshire.[2]

---

[2]In his affidavit, Sanchez disputes that he fought extradition but acknowledges that he signed a lot of papers presented to him by his public defenders.  The state court found that he fought extradition, and Sanchez has not shown by clear

4

He was returned to complete his New Hampshire sentence on November 29, 1999.

In 2000, Sanchez filed a petition for habeas corpus in state court seeking credit for pretrial and post-extradition confinement and for the time he was at liberty after being released in New Jersey. On March 13, 2001, the state court granted his habeas claim as to some of the pretrial confinement credit but otherwise denied his petition. On August 19, 2002, the New Hampshire Supreme Court vacated Sanchez's sentence. New counsel was appointed for Sanchez, and he was resentenced on December 19, 2002, to seven-and-a-half to fifteen years in the New Hampshire State Prison. In July of 2003, Sanchez filed a motion to correct his sentence, which was denied on July 30, 2003, by Judge James J. Barry, Jr., without a written decision. On appeal, the New Hampshire Supreme Court remanded the case for "an order with reasons sufficient for this court to review concerning the denial of the defendant's motion to correct improper sentence." Judge Barry held a hearing and issued a written decision on December 3, 2003, again denying Sanchez's motion. The supreme court declined Sanchez's appeal from that decision.

---

and convincing evidence that the finding is in error. See § 2254(e)(1).

5

The Warden now agrees with Sanchez that he is entitled to an additional ninety-six days of credit against his sentence for time that he served in state custody. Specifically, the Warden states that Sanchez is entitled to ninety-four days for the period from November 29, 1999, to March 2, 1999, while he was incarcerated at the Hillsborough County House of Correction, and for two more days that were incorrectly omitted from the credit he was given for the period from March 2, 2000, through December 19, 2002. Therefore, Sanchez's petition is granted as to his first claim.

Sanchez's second claim is that he is entitled to credit for the time he spent at liberty after the Hillsborough County Sheriff's Department erroneously set him free on June 10, 1997, and until he was returned to custody in New Hampshire on November 29, 1999. Sanchez's claim invokes a common law doctrine, recognized by some state and federal courts, that the government cannot arbitrarily delay the expiration of a prisoner's sentence by forcing him to serve his sentence in installments or by failing to credit him for time while he was erroneously released

6

from custody.[3] See, e.g., Free v. Miles, 333 F.3d 550, 554-55 (5th Cir. 2003); Weekes v. Fleming, 301 F.3d 1175, 1180 (10th Cir. 2002); Dunne v. Keohane, 14 F.3d 335, 336-37 (7th Cir. 1994); United States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988); United States v. Nickens, 856 F. Supp. 72, 76 (D.P.R. 1994); State v. Valrand, 103 N.H. 518, 520 (1961); Timothy P. Lydon, If the Parole Board Blunders, Does the Fourteenth Amendment Set the Prisoner Free?  Balancing the Liberty Interests of Erroneously Released Prisoners, 88 Geo. L.J. 565 (March 2000); Gabriel J. Chin, Getting out of Jail Free: Sentence Credit for Periods of Mistaken Liberty, 45 Cath. U. L. Rev. 403 (Winter 1996).  Sanchez also cites Sandin v. Conner, 515 U.S. 472 (1995),

---

[3]A separate and distinct doctrine holds that the government is barred from requiring a prisoner to serve or complete a sentence after the government erroneously releases or fails to incarcerate the prisoner, without fault by the prisoner, and delays incarceration or reincarceration for an inordinate amount of time.  See, e.g., Hawkins v. Freeman, 195 F.3d 732, 744-45 (4th Cir. 1999) (citing cases); Bonebrake v. Norris, 319 F. Supp. 2d 928, 930-31 (E.D. Ark. 2003) (same); United States v. Mercedes, 1997 WL 122785, at *3 (S.D.N.Y. Mar. 17, 1997) (same). In contrast, Sanchez contends that he is entitled to credit against his sentence, which he is serving, for the time he was erroneously at liberty due to the state's mistake.  Although Sanchez also argues that he is entitled to "commutation" of his sentence as an alternative to crediting him with the time while he was erroneously at liberty, that is not pled as a separate claim.  In any case, the state did not lose jurisdiction over Sanchez or unreasonably delay its efforts to return him to custody in New Hampshire.

and Thompson v. Cockrell, 263 F.3d 423 (5th Cir. 2001), to support his claim.

To be entitled to habeas relief under § 2254 when the state court adjudicated his federal claim on the merits, a petitioner must show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States."[4]  § 2254(d)(1).  A state court's decision is not "contrary to" federal law when it fails to cite federal precedent.  Early v. Packer, 537 U.S. 3, 8 (2002).  "[A] state court need not even be aware of [Supreme Court] precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Mitchell v. Esparza, 124 S. Ct. 7, 10 (2003) (internal quotation marks omitted).  A decision is "contrary to" clearly established Supreme Court precedent if it "'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"  Id. (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

---

[4]Sanchez has not argued or demonstrated that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); see also § 2245(e)(1).

"Under the 'unreasonable application' prong of 28 U.S.C. §
2254(d)(1), the petition may be granted if the state court
'identifies the correct governing legal principle from [the
Supreme] Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case.'" Horton v.
Allen, 370 F.3d 75, 80 (1st Cir. 2004) (quoting Williams, 529
U.S. at 413). An unreasonable application of the law is
objectively unreasonable, not merely incorrect. Williams, 529
U.S. at 410-11. If the state court did not resolve the
petitioner's federal claim, however, the deferential standard
required by § 2254(d) does not apply and instead, the claim is
reviewed under a de novo standard. Horton, 370 F.3d at 80
(citing Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001);
Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003)).

The last state court proceeding to address Sanchez's claims
was initiated by his "Motion to Correct Improper Sentence" filed
in July of 2003, which was denied by the state court's decision
in December of 2003. See State v. Sanchez, 96-S-0134 (N.H.
Super. Ct. Dec. 3, 2003). The court found that Sanchez was
released "through a ministerial error that was attempted to be
rectified within one week of its coming to light. Once the
defendant's whereabouts were learned, the State did everything
within its power to seek his return to the State of New

9

Hampshire." Id. at *5. The court concluded: "The defendant is not entitled to any credit for the time he was at liberty." Id.

The court provided little reasoned analysis in support of the decision, citing only two New Hampshire cases.[5] The first case, State v. Harnum, applies to Sanchez's claim under New Hampshire Revised Statutes Annotated § 651-A:23 for credit for pretrial confinement. 142 N.H. 195, 196 (1997). The other case cited by the state court, State v. Sheehy, 115 N.H. 175 (1975), considers the federal due process implications when the state compels a paroled prisoner to serve out his sentence after he is arrested and held in custody in another jurisdiction. The court held that "[t]he State cannot, consistent with the fundamental principles of justice protected by the due process clause of the fourteenth amendment, compel a parolee to serve out his sentence after the State has manifested a gross disinterest in him." Id. at 177. To the extent Sanchez raised a claim in state court, and maintains that claim here, that he was entitled to avoid his

_____

[5]The state court decision issued in 2001 on Sanchez's habeas petition considered the common law rule and held that because the state was merely negligent in causing his release and issued an arrest warrant within a week of the release, Sanchez was not entitled to credit for that time. Sanchez v. Gerry, 00-E-471 (N.H. Super. Ct. Mar. 13, 2001). Because Sanchez was resentenced after that decision issued and his motion to correct his sentence pertained to the later-imposed sentence, the earlier 2001 decision is not before the court for habeas review.

10

sentence altogether, Sheehy is pertinent to that claim. The state court's decision on that claim is neither contrary to nor an unreasonable application of federal law. See footnote 3, supra.

Sheehy is not pertinent to the claim, raised in state court and in this proceeding, in which Sanchez seeks credit for the time after he was erroneously released from the state's custody. The state court did not decide that claim on the merits in the 2003 decision. Therefore, the decision to deny Sanchez's motion, as to that claim, is reviewed under the de novo standard.[6]

A. Procedural Due Process

Sanchez's claim for credit against his sentence for the time after the state erroneously released him raises an issue of a prisoner's right to due process before the government may extend his sentence. In Sandin, the Supreme Court considered a prisoner's claim that his conviction on a disciplinary infraction and confinement in segregation, in the absence of the procedures required by Wolff v. McDonnell, 418 U.S. 539 (1974), violated due process. Sandin, 515 U.S. at 475-77. The Court reviewed its due

---

[6]In her motion for summary judgment, the warden suggests that the 2001 and 2003 decisions should be reviewed together and asserts, without proper analysis, that the deferential standard of § 2254(d) applies in this case.

11

process jurisprudence in similar contexts and reiterated the rule that "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." Id. at 480 (internal quotation marks omitted). The Court recognized that even when the due process clause itself does not provide protected liberty interests, nevertheless:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84. The Court held that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. The Court also distinguished the petitioner's case from one that would be protected by the due process clause itself, "where the State's action will inevitably affect the duration of [the prisoner's] sentence." Id. at 487. Therefore, the Court held that the petitioner was not entitled to the procedures mandated by Wolff. Sandin, 515 U.S. at 487.

In Thompson, the Fifth Circuit considered the due process implications of a prisoner's inadvertent release in the context of Sandin and Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S.

12

445, 454 (1985), and concluded, based on Texas law, that the prisoner had a state-created liberty interest not to lose calendar time against his sentence because of the state's erroneous decision to release him.[7]  Thompson, 263 F.3d at 427-28.  The court first decided that the due process clause itself does not protect a prisoner's right to credit for time while he was erroneously released because "'[r]equiring [him] to complete the remainder of his sentence after his premature release does not exceed his sentence in an unexpected manner."  Id. at 426.  The court then considered whether Texas law created a protected liberty interest.

Noting a Texas case that prohibited the state from requiring prisoners to serve sentences in installments, the court held that state law created "a legal entitlement to calendar time during the period of Thompson's release."  Id. at 427 (citing Ex parte Morris, 626 S.W.2d 754 (Tex. Crim. App. 1982)).[8]  The court also ruled that "[t]he deprivation of calendar time inevitably affected the duration of Thompson's confinement" because he would

_____

    [7]In Hill, the Supreme Court ruled that a prisoner has a liberty interest in good time credits and that the due process clause requires that a decision by a prison disciplinary board to revoke good time credits must be supported by at least "some evidence."  472 U.S. at 454-55.

    [8]Ex parte Morris was subsequently overruled by Ex parte Hale, 117 S.W. 3d 866, 872 n.26 (Tex. Crim. App. 2003).

13

have to make up the time that elapsed while he was erroneously at liberty.  Id.  As a result, the court held that based on Sandin and Hill, Thompson was entitled to the procedural protections provided in Wolff before the state could deny him credit against his sentence for the time he was erroneously released.  Id. at 427.  Because the state had provided no evidence to support its denial of credit for that time, the court ruled that Thompson was entitled to credit for the time.  Id. at 428.

It might be persuasively argued, based on Sandin and contrary to the interpretation in Thompson, that because the state's decision not to credit Sanchez for the time he was erroneously at liberty will inevitably affect the duration of his confinement, he has a liberty interest in that time that is protected by procedural due process.  See, e.g., Dunne, 14 F.3d at 336 (explaining effect of release time on expiration of sentence).  In addition, as in the Texas case relied on in Thompson, the New Hampshire Supreme Court has held that "a prisoner is entitled to serve his sentence continuously and is not required to serve it in installments in the absence of statutory authority."  Valrand, 103 N.H. at 520.  Based on either theory, Sanchez could have a liberty interest in credit for the time that elapsed while he was erroneously at liberty that would implicate procedural due process protections.

14

It is not necessary, however, to decide which, if either, of the due process analyses would apply to Sanchez's claim, because no procedural due process violation occurred in his case. A prisoner is entitled, at a minimum, to the process described in Wolff, 418 U.S. at 566, before the state may infringe a protected liberty interest. See McGuinness v. Dubois, 75 F.3d 794, 797 (1st Cir. 1996). Sanchez's sentence was reviewed in the state courts in three different proceedings: his habeas corpus proceeding decided in March of 2001, his resentencing in December of 2002, and the proceeding on his motion to correct his sentence in July of 2003. Sanchez has not shown nor even argued that the process he was provided at any of those proceedings failed to meet the Wolff requirements. Therefore, based on the record presented for purposes of habeas corpus, Sanchez received the process which was required and no procedural due process violation occurred.

B. <u>Ineffective Assistance of Counsel</u>

If Sanchez intended and were permitted to maintain a claim that his counsel's representation at his resentencing was ineffective for failing to argue that he was entitled to credit for the time after he was erroneously released, the claim would

15

not be successful.[9]  To prove a claim of ineffective assistance of counsel, Sanchez would have to show both that his counsel's performance was deficient and that he was prejudiced as a result. Castillo v. Matesanz, 348 F.3d 1, 11 (1st Cir. 2003) (citing Strickland v. Washington, 466 U.S. 668, 587 (1984)).  The record presented in support of Sanchez's habeas corpus petition includes nothing to prove the elements of the claim.

Sanchez would not be entitled to a hearing to develop the factual basis of his claim unless he was not at fault in failing to develop the evidence in the state proceedings or he satisfies the requirements of § 2254(d)(2).  Holland v. Jackson, 124 S. Ct. 2736, 2738 (U.S. 2004).  He did not raise a claim of ineffective assistance of counsel with respect to credit for the time after he was erroneously released as part of his state court motion to correct his sentence or on appeal, and the state court decision does not mention such a claim.[10]  He also has not shown that the

_____

[9]As noted in footnote one, although Sanchez included a claim of ineffective assistance of counsel in his petition, he did not seek to clarify his claims to include that claim in response to the magistrate judge's order on preliminary review nor did he pursue that claim in his own motion for summary judgment or in response to the warden's motion.

[10]In the first numbered paragraph of his "Motion to Correct Improper Sentence," Sanchez wrote that his counsel at his resentencing proceeding was "grossly ineffective" to the extent he either suggested or agreed with the number of days Sanchez was credited for pretrial confinement.  Sanchez did not raise a

requirements of § 2254(d)(2) would be satisfied by the circumstances of this case. Therefore, because no factual basis exists in the record, Sanchez has failed to prove his ineffective assistance of counsel claim, and it is denied.

C. Substantive Due Process

Due process includes more than the right to fair procedures. Aversa v. United States, 99 F.3d 1200, 1215 (1st Cir. 1996) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). "The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). The First Circuit holds that substantive due process violations may occur in two different circumstances, without limiting the grounds to executive or legislative action: when the state deprives a person of an identified liberty or property interest that is protected by the due process clause or when the state's

---

separate claim of ineffective assistance of counsel or otherwise pursue such a claim in his motion, and he did not assert that counsel was ineffective for failing to seek credit for the time Sanchez was erroneously at liberty. There is no suggestion in the state court's decision that such a claim was presented as part of the hearing.

conduct is such that it "shocks the conscience."[11] <u>Rosenfeld v. Egy</u>, 346 F.3d 11, 15 (1st Cir. 2003); <u>Cruz-Erazo v. Rivera-Montanez</u>, 212 F.3d 617, 622 (1st Cir. 2000); <u>Pittsley v. Warish</u>, 927 F.2d 3, 6 (1st Cir. 1991). <u>But c.f.</u> <u>United States v. Acosta-Martinez</u>, 252 F.3d 13, 21 (1st Cir. 2001) ("When testing executive action, the Supreme Court has used the 'shocking to the conscience' test.").

The First Circuit describes conscience-shocking conduct as "state actions which are arbitrary and capricious, or those that run counter to the concept of ordered liberty, or those which, in context, appear shocking or violative of universal standards of decency." <u>Cruz-Erazo</u>, 212 F.3d at 622 (internal quotation marks omitted). In <u>DeWitt v. Ventetoulo</u>, 6 F.3d 32, 35 (1st Cir. 1993), the court held that only in an extreme case would an

---

[11]In contrast, the Supreme Court has held that executive action, rather than legislative action, violates substantive due process only when that action is conscience-shocking. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846-850 (1998); <u>Beck v. Wilson</u>, 2004 WL 1687000, *5 (8th Cir. July 29, 2004); <u>Fraternal Order of Police Dep't</u>, 2004 WL 1606996, *3 (D.C. Cir. July 20, 2004); <u>Benn v. Universal Health Sys., Inc.</u>, 371 F.3d 165, 174 (3d Cir. 2004); <u>United States v. Al-Hamdi</u>, 356 F.3d 564, 574 (4th Cir. 2004); <u>Sperle v. Mich. Dep't of Corrs.</u>, 297 F.3d 483, 491 (6th Cir. 2002); <u>United States v. Rahman</u>, 189 F.3d 88, 131 (2d Cir. 1999). <u>See also</u> <u>Hawkins</u>, 195 F.3d at 738 (explaining different analyses applicable to substantive due process claims depending on whether challenged action is executive or legistlative).

18

upward correction of a sentence be "so unfair that it must be deemed inconsistent with fundamental notions of fairness embodied in the Due Process Clause." The court provided a non-exhaustive list to determine when such a case might arise directing attention "to the lapse of time between the mistake and the attempted [correction], to whether or not the defendant contributed to the mistake and the reasonableness of his intervening expectations, to the prejudice worked by a later change, and to the diligence exercised by the state in seeking the change." Id.

Some courts have held, without necessarily invoking due process or distinguishing between substantive and procedural due process, that the state cannot impose a sentence in installments by failing to give a prisoner credit for time while he was erroneously released from custody. See, e.g., Clark v. Floyd, 80 F.3d 371, 374 (9th Cir. 1996); Green v. Christiansen, 732 F.2d 1397, 1400 (9th Cir. 1984); Shields v. Beto, 370 F.2d 1003 (5th Cir. 1967); White v. Pearlman, 42 F.2d 788 (10th Cir. 1930). In Martinez, the court explained that whether due process required that the defendant be credited with the time he was erroneously at liberty depended on the totality of the circumstances surrounding the release and in particular on factors such as whether the mistake was attributable to the defendant, the degree

19

of the authorities' negligence, and whether the situation created is fundamentally unfair. 837 F.2d at 864; accord In re Extradition of Harrison, 2004 WL 1145831, *4-*5 (S.D.N.Y May 21, 2004). See also Matthews v. Meese, 827 F.2d 313, 314-15 (8th Cir. 1987).

In Hawkins v. Freeman, Hawkins sought habeas corpus relief under § 2254 on the grounds that the North Carolina Parole Commission's revocation of his parole, after discovering that it had mistakenly granted him parole twenty months earlier, violated substantive due process. 195 F.3d at 735. The Fourth Circuit noted that the circumstances of the Commission's decision potentially raised legislative as well as executive action and analyzed the claim under both analytic frameworks. Id. at 740. After an exhaustive review of relevant case law, the court decided that the Commission's decision was not an abuse of power without any reasonable justification and therefore, did not shock the conscience. Id. at 746.

The record presented in this case also does not support a conclusion that the state court's decision not to credit Sanchez with the time after he was erroneously released violates substantive due process. Sanchez was not apparently at fault in the officers' initial erroneous decision to release him, and the officers' conduct in releasing him, as Sanchez describes it,

20

should raise serious concerns in the Hillsborough County Sheriff's Department. Thereafter, however, Sanchez did not attempt to contact the authorities in New Hampshire and assumed a false identity, which delayed his apprehension under the arrest warrant that was issued a week after his release. He was soon arrested in Massachusetts on charges of criminal activity that he committed after his release. Once his true identity was discovered, he fought extradition to New Hampshire. Based on these circumstances, the state court's decision not to grant Sanchez credit for the time between his release and his return to New Hampshire is not conscience-shocking.

Assuming, based on First Circuit precedent, that actions by government officials may violate due process in the absence of conscience-shocking conduct, such a claim must be based on the violation of a fundamental right as recognized by the due process clause itself. See Glucksberg, 521 U.S. at 720-21 (substantive due process "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition"); Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 532 (1st Cir. 1995); see also Hawkins, 195 F.3d at 747. Although a prisoner may have a state law or common law expectation that he will not be forced to serve his sentence in installments, no court has recognized that expectation as a

fundamental right protected by substantive due process.  See, e.g., Dunne, 14 F.3d at 336-37.  The Fourth Circuit concluded that an asserted right of "a prisoner to remain free on erroneously granted parole so long as he did not contribute to or know of the error and has for an appreciable time remained on good behavior to the point that his expectations for continued freedom from incarceration have 'crystallized'" was not a fundamental right for purposes of substantive due process protection.  Hawkins, 195 F.3d at 747.

In the absence of direct guidance from either the Supreme Court or the First Circuit, this court will not recognize a new "fundamental right" in the circumstances of this case.  See Glucksberg, 521 U.S. at 720.  The circumstances also do not rise to the level of conscience-shocking conduct.  Therefore, Sanchez has not demonstrated that he is entitled to habeas relief based on a violation of substantive due process.


## Conclusion

For the foregoing reasons, the warden's motion for summary judgment (document no. 7) is granted.  The petitioner's motion for summary judgment (document no. 5) is granted as to the first

22

claim seeking credit for 96 days of pretrial confinement and is otherwise denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

August 9, 2004

cc: Miguel Sanchez, pro se
    Susan P. McGinnis, Esquire

23